KELLY H. RANKIN
United States Attorney

CAROL A. STATKUS
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

DAVID M. ROCHLIN
SPECIAL ATTORNEY
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
c/o U.S. EPA (Mail Code ENF-L)
1595 Wynkoop Street
Denver, Colorado 80202
Telephone: (303) 312-6892

# **ORIGINAL**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 1 0 2009

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| HERMES CONSOLIDATED, INC. ) | **09CV  028-4** |
| dba Wyoming Refining Company, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA") alleges the following:

## NATURE OF ACTION

1.  This is a civil action brought by the United States against Hermes Consolidated, Inc., doing business as Wyoming Refining Company ("WRC"), under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b); Section 109(c) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9609(c); and Section 325(b) of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11045(b), for alleged environmental violations at WRC's petroleum refinery located in Newcastle, Wyoming ("the refinery").

2.  The refinery has been and is in violation of the following environmental statutes and regulations applicable to the petroleum refining industry:

a)  the CAA, 42 U.S.C. § 7401 et seq., specifically Prevention of Significant Deterioration ("PSD"), Part C of Subchapter I of the CAA, 42 U.S.C. § 7475, and the regulations promulgated there under at 40 C.F.R. § 52.21 (the "PSD Rules"), and the regulations promulgated at 40 C.F.R. § 51.165, Part 51, Appendix 5, and § 52.24 ("PSD/NSR Regulations"); New Source Performance Standards ("NSPS"), 40 C.F.R. Part 60, Subpart A and J, Section 111 of the CAA, 42 U.S.C. § 7411 ("Refinery NSPS Regulations"); Leak Detection and Repair ("LDAR"), 40 C.F.R. Parts 60 Subparts VV and GGG, Part 61 Subparts J and V, and Part 63 Subpart F, H, and CC, Section 111 and 112 of the CAA, 42 U.S.C. § 7411 ("LDAR Regulations"); National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Benzene, Section 112 of the CAA, 40 C.F.R. Part 61 Subpart FF ("Benzene Waste NESHAP Regulations"); and the Wyoming State Implementation Plan ("SIP") which incorporates and/or implements the above-listed federal regulations;

Complaint -2-

b) Section 103(a) of CERCLA, 42 U.S.C. § 9603(a); and the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004(b).

3. The United States seeks an injunction ordering WRC to comply with the above statutes and the laws and regulations promulgated there under, and civil penalties for defendant's past and ongoing violations.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Sections 109(c) and 113(b) of CERCLA, 42 U.S.C. §§ 9609(c), 9613(b); and Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3).

5. Venue is proper in the District of Wyoming pursuant to 28 U.S.C. §§ 1391(b), (c), and 1395(a); Section 113(b) of the CAA, 42 U.S.C. § 7413(b);  Sections 109(c) and 113(b) of the CERCLA, 42 U.S.C. §§ 9609(c), 9613(b); and Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), because the defendant resides in this judicial district.

## AUTHORITY AND NOTICE TO STATES

6. Authority to bring this action is vested in the United States Department of Justice pursuant to Sections 113(b) and 305 of the CAA, 42 U.S.C. §§ 7413(b) and 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

7. Pursuant to Section 113(a)(1) of the CAA,  42 U.S.C. § 7413(a)(1), notice of the violations of the Wyoming SIP that are alleged in this complaint has been given to the State of Wyoming and WRC at least 30 days prior to the filing of this complaint.

8. Pursuant to Section 113(b) of the CAA, 42. U.S.C. § 7413(b), notice of the commencement of this action has been given to the appropriate state air pollution control agency

Complaint -3-

in the State of Wyoming.

## DEFENDANTS

9. WRC does business in Wyoming. WRC is owned by Hermes Consolidated, Inc., which is incorporated in Delaware.

10. For the purposes of Section 113(b) of the CAA, 42 U.S.C. § 7413(b), WRC is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and applicable federal and state regulations promulgated pursuant to these statutes. WRC is an "owner or operator" of the refinery within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b), or 329(7) of EPCRA, 42 U.S.C. § 11049(7).

## STATUTORY AND REGULATORY BACKGROUND
## CLEAN AIR ACT REQUIREMENTS

11. The Clean Air Act established a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

12. Section 109 of the CAA, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants. The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13. Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

Complaint -4-

14. Under Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. These designations have been approved by EPA and are located at 40 C.F.R. Part 81. An area that meets the NAAQS for a particular pollutant is classified as an "attainment" area; one that does not is classified as a "non-attainment" area.

## Prevention of Significant Deterioration/New Source Review

15. Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process. These provisions are referred to herein as the "PSD program."

16. Section 165(a) of the CAA, 42 U.S.C. § 7475(a), prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment unless a PSD permit has been issued. Section 169(1) of the CAA, 42 U.S.C. § 7479(1), defines "major emitting facility" as a source with the potential to emit 250 tons per year ("tpy") or more of any air pollutant.

17. As set forth at 40 C.F.R. § 52.21(k), the PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate, before construction commences, that construction of the facility will not cause or contribute to

air pollution in violation of any ambient air quality standard or any specified incremental amount.

18. As set forth at 40 C.F.R. § 52.21(i), any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit. "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the CAA. "Significant" is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions increase or the potential of a source to emit any of the following criteria pollutants, at a rate of emissions that would equal or exceed any of the following: for ozone, 40 tons per year of volatile organic compounds (VOCs); for carbon monoxide (CO), 100 tons per year; for nitrogen oxides (NOx), 40 tons per year; for sulfur dioxide (SO2), 100 tons per year, (hereinafter "criteria pollutants").

19. As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major modification in an attainment area shall install and operate best available control technology ("BACT") for each pollutant subject to regulation under the CAA that it would have the potential to emit in significant quantities.

20. Section 161 of the CAA, 42 U.S.C. § 7471, requires SIPs to contain emission limitations and such other measures as may be necessary, as determined under the regulations promulgated pursuant to these provisions, to prevent significant deterioration of air quality in attainment areas.

21. A state may comply with Section 161 of the CAA either by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved as part of its SIP by EPA, which must be at least as stringent

Complaint -6-

as those set forth at 40 C.F.R. § 51.166.

22. Pursuant to PSD regulations, any owner or operator who commences construction or modification of a major source without applying for and receiving approval for such construction or modification is subject to an enforcement action. 40 C.F.R. § 51.166.

23. Pursuant to Section 113(b)(1) of the CAA, 42 U.S.C. § 7413(b)(1), the violation of any requirement or provision of an applicable implementation plan is a violation of the CAA.

24. Whenever any person has violated, or is in violation of, any requirement or prohibition of any SIP, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## Flaring and New Source Performance Standards

25. Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the Administrator of EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant. The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

26. Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the Administrator of the EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each of these categories. "New Sources" are defined as stationary sources, the construction or modification of which is commenced after

the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source. 42 U.S.C. § 7411(b).

27. Pursuant to Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), EPA has identified petroleum refineries as one category of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

28. Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), EPA has promulgated New Source Performance Standards ("NSPS") for various industrial categories, including petroleum refineries. NSPS requirements for petroleum refineries are codified in 40 C.F.R. Part 60, Subpart J and Ja, §§ 60.100-60.109 and §§ 60.100a-60.109a.

29. The provisions of 40 C.F.R. Part 60 Subpart J apply to specified "affected facilities," including, inter alia, fuel gas combustion devices that commenced construction or modification after June 11, 1973. 40 C.F.R. § 60.100(a), (b).   The provisions of 40 C.F.R. Part 60 Subpart Ja apply to specified "affected facilities," including, inter alia, fuel gas combustion devices that commenced construction or modification after June 24, 2008. 40 C.F.R. § 60.100a(a), (b).

30. 40 C.F.R. § 60.104(a) prohibits the burning in any fuel gas combustion device of any fuel gas that contains hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10. The combustion in a flare of process upset gases or fuel gas that is released to the flare as a result of relief valve leakage or other emergency malfunctions is exempt from the emission limit of 40 C.F.R. § 60.104(a)(1).

31. Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA has promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19, that apply to owners or operators of any stationary source that contains an "affected facility" subject to

Complaint -8-

regulation under 40 C.F.R. Part 60.

32. 40 C.F.R. § 60.11(d) requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

33. Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits the operation of any new source in violation of an NSPS applicable to such source. Thus, a violation of an NSPS is a violation of Section 111(e) of the CAA.

34. Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable New Source Performance Standard, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## Leak Detection and Repair

35. Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, EPA promulgated New Source Performance Standards for Equipment Leaks of VOCs in Petroleum Refineries at 40 C.F.R. Part 60, Subpart GGG. Subpart GGG, in turn, incorporated many of the NSPS standards at 40 C.F.R. Part 60, Subpart VV. Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated emission standards for hazardous air pollutants ("National Emission

Complaint -9-

Standards for Hazardous Air Pollutants" or "NESHAPs") at 40 C.F.R. Part 61, and NESHAPs for source categories at 40 C.F.R. Part 63. The relevant NESHAPs are found at 40 C.F.R. Part 61, Subpart J and Ja (for equipment leaks of benzene) and Subpart V (for equipment leaks); and 40 C.F.R. Part 63, Subpart F (for organic hazardous air pollutants from the synthetic organic chemical manufacturing industry), Subpart H (for organic hazardous air pollutants for equipment leaks) and Subpart CC (for hazardous air pollutants from petroleum refineries).

36. The focus of the LDAR program is the refinery-wide inventory of all possible leaking equipment, the regular monitoring of that equipment to identify leaks, and the repair of leaks as soon as they are identified.

37. Whenever a person has violated, or is in violation of, any requirement or prohibition of any applicable New Source Performance Standard or any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## Benzene Waste NESHAP

38. The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

39. In March 1990, EPA promulgated national emission standards applicable to benzene-

Complaint -10-

containing waste waters. Benzene is a listed HAP and a known carcinogen. The benzene waste regulations are set forth at 40 C.F.R. Part 61 Subparts FF, (National Emission Standard for Benzene Waste Operations). Benzene is a naturally-occurring constituent of petroleum product and petroleum waste and is highly volatile. Benzene emissions can be detected anywhere in a refinery where the petroleum product or waste materials are exposed to the ambient air.

40. Pursuant to the Benzene waste NESHAP, refineries are required to tabulate the total annual benzene ("TAB") content in their wastewater. If the TAB is over 10 Mg per year, the refinery is required to elect a control option for control of benzene.

41. Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## CERCLA REQUIREMENTS

42. Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires a person in charge of a facility to immediately notify the National Response Center of a release of a hazardous substance from such facility in an amount equal to or greater than the amount determined pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602 (the "reportable quantity").

43. Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), provides that any person who

Complaint -11-

violates the notice requirements of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), shall be liable to the United States for civil penalties.

## EPCRA REQUIREMENTS

44. Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a) and (b), requires the owner and operator of a facility at which a hazardous chemical is produced, used, or stored, to immediately notify the State Emergency Response Commission ("SERC") and the Local Emergency Planning Committee ("LEPC") of certain specified releases of a hazardous or extremely hazardous substance.

45. Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), requires that, as soon as practicable after a release which requires notice under Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), the owner or operator shall provide a written follow up emergency notice providing certain specified additional information.

46. Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), provides that any person who violates any requirement of Section 304 of EPCRA, 42 U.S.C. § 11004, shall be liable to the United States for civil penalties.

## FIRST CLAIM FOR RELIEF
(CAA PSD/NSR Violations at FCCUs)

47. Paragraphs 1 though 46 are re-alleged and incorporated by reference as if fully set forth herein.

48. WRC owns and operates one or more FCCU regenerators at the refinery.

49. WRC has modified one or more FCCU regenerators at the refinery.

50. Each modification to each FCCU regenerator at the refinery was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) to existing major stationary sources

Complaint -12-

that resulted in a significant net emissions increase of: NOx, SO2, PM, and CO from each FCCU regenerator.

51. Since the major modification of each FCCU regenerator at the refinery, WRC has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, and the Wyoming SIP, by 1) failing to undergo PSD/NSR review for each FCCU regenerator, 2) failing to obtain permits, and 3) failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

52. Unless restrained by an Order of the Court, these violations of the Clean Air Act and the implementing regulations will continue.

53. The violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

## SECOND CLAIM FOR RELIEF
### (NSPS Violations at FCCUs)

54. The allegations in Paragraphs 1 through 53 are hereby re-alleged and incorporated by reference as if fully set forth herein.

55. WRC is the "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of one or more FCCU regenerators at the refinery.

Complaint -13-

56. Each FCCU regenerator at the refinery is a "fluid catalytic cracking unit catalyst regenerator" as defined in 40 C.F.R. § 60.101(n), and a "stationary source" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602 (z).

57. Each FCCU regenerator at the refinery is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411 (a)(2).

58. Each FCCU regenerator at the refinery is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60, Subpart J.

59. Each FCCU regenerator at the refinery is subject to the emission limits set forth in 40 C.F.R. §§ 60.102(a), 60.103(a), and 60.104(b).

60. WRC has violated 40 C.F.R. §§ 60.102(a), 60.103(a), and 60.104(b), and thus Section 111 of the CAA, by not complying with the emissions standards set forth in those sections for FCCU regenerators at the refinery.

61. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

62. The violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each

violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

## THIRD CLAIM FOR RELIEF
### (CAA PSD/NSR Violations at Heaters and Boilers)

63. Paragraphs 1 through 62 are re-alleged and incorporated by reference as if fully set forth herein.

64. The WRC refinery uses the physical, thermal, and chemical separation of crude oil to make marketable petroleum products and asphalt. WRC owns and operates heaters and boilers for that purpose at the refinery.

65. WRC's petroleum and asphalt refining processes result in emissions of significant quantities of criteria air pollutants, including nitrogen oxides ("NOx"), carbon monoxide ("CO"), particulate matter ("PM"), sulfur dioxide ("SO2"), as well as volatile organic compounds ("VOCs") and hazardous air pollutants ("HAPs"), including benzene. The primary sources of these emissions are process heaters and boilers.

66. The Newcastle refinery is a "petroleum refiner[y]" in accordance with Section 169(1) of the CAA, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources as a source with the potential to emit 100 tpy or more of any criteria air pollutant. The WRC refinery is a major emitting facility with the potential to emit in excess of 100 tpy of NOx, PM, and SO2 which are listed criteria air pollutants.

67. At all times relevant to this Complaint, the refinery has been located in an area designated as "Class II" under Section 162(b) of the CAA, 42 U.S.C. § 7472(b), that has attained the National Ambient Air Quality Standards for Ozone, of which NOx is a precursor, SO2, and PM under Section 107(d) of the CAA, 42 U.S.C. § 7407(d).

Complaint -15-

68. On numerous occasions, WRC has failed to fully and accurately identify the emissions from the refinery of one or more criteria pollutants.

69. During the time period relevant to this Complaint, WRC has modified the heaters and boilers at the refinery.

70. Each modification was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) to an existing major stationary source that resulted in a significant net emissions increase of NOx and SO2 from the heaters and boilers.

71. Since the initial construction or major modification of the heaters and boilers, WRC has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the Wyoming State Implementation Plan, by failing to undergo PSD/NSR review for the heaters and boilers, by failing to obtain permits, and by failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

72. Unless restrained by an Order of the Court, these violations of the Clean Air Act and the implementing regulations will continue.

73. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

**FOURTH CLAIM FOR RELIEF**
**(CAA/NSPS Violations at Flaring Devices and Heaters and Boilers)**

74. The allegations in Paragraphs 1 through 73 are hereby re-alleged and incorporated by reference as if fully set forth herein.

75. WRC is an "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of flaring devices and heaters and boilers located at the refinery.

76. The flaring devices and heaters and boilers are "fuel gas combustion devices" as defined in 40 C.F.R. § 60.101(g), and "stationary sources" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

77. The flaring devices and heaters and boilers are "affected facilities" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and "new sources" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

78. The flaring devices and heaters and boilers are subject to the emission limitation set forth in 40 C.F.R. § 60.104(a)(1).

79. WRC has burned in the flaring devices and heaters and boilers at the refinery, fuel gas that contained hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10, in violation of 40 C.F.R. § 60.104(a) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

80. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

81. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive

relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to

January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January

31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring

after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990,

28 U.S.C. § 2461, as amended.

**FIFTH CLAIM FOR RELIEF**
**(CAA/NSPS:  40 C.F.R. § 60.11(d))**
**(Failing to Operate and Maintain the**
**the Heaters and Boilers and the Flaring Devices**
**in a Manner Consistent with Good Air Pollution Control Practice)**

82. The allegations in Paragraphs 1 through 81 are hereby re-alleged and incorporated by
reference as if fully set forth herein.

83. WRC has emitted unpermitted quantities of NOx and SO2 from its heaters and boilers
at the refinery.  These pollutants were emitted under circumstances that did not represent good
air pollution control practices, in violation of 40 C.F.R. § 60.11(d).

84. Unless restrained by an order of the Court, these violations of the CAA and the
implementing regulations will continue.

85. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of
the CAA, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive
relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to
January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January
31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring
after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990,
28 U.S.C. § 2461, as amended.

Complaint -18-

## SIXTH CLAIM FOR RELIEF
### (Leak Detection and Repair Requirements)

86. The allegations in Paragraphs 1 through 85 are re-alleged and incorporated by reference as if fully set forth herein.

87. WRC is required under 40 C.F.R. Part 60, Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which references standards set forth at 40 C.F.R. §§ 60.482-1 to 60.482-10, and alternative standards set forth at 40 C.F.R. §§ 60.483-1 to 60.483-2, for certain refinery equipment in light liquid and gas and/or vapor service, constructed or modified after January 4, 1983.

88. Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or operator of valves in light liquid and gas and/or vapor service must initially comply with the leak detection monitoring and repair requirements set forth in 40 C.F.R. § 60.482-7, including the use of Standard Method 21 to monitor for such leaks.

89. Pursuant to 40 C.F.R. Part 61 Subpart J, WRC is required to comply with the requirements set forth in 40 C.F.R. Part 61, Subpart V, for certain refinery equipment in light liquid and gas and/or vapor benzene service.

90. WRC has failed to accurately monitor the valves and other components in light liquid and gas and/or vapor service at the refinery as required by Standard Method 21, to report the valves and other components in light liquid and gas and/or vapor service that were leaking, and to repair all leaking VOC valves and other components in light liquid and gas and/or vapor service in a timely manner.

91. WRC's acts or omissions referred to in the preceding four Paragraphs constitute violations of 40 C.F.R. Part 60, Subparts GGG and VV; 40 C.F.R. Part 61, Subparts J and V; and

Complaint -19-

40 C.F.R. Part 63, Subparts F, H, and CC.

92. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

93. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## SEVENTH CLAIM FOR RELIEF
### (Benzene Waste NESHAP)

94. The allegations in Paragraphs 1 through 93 are hereby re-alleged and incorporated by reference as if fully set forth herein.

95. At all times relevant to this Complaint, WRC has asserted that the TAB at the refinery is less than 10 megagrams per year, and is not subject to the control requirements of 40 C.F.R. § 61.342.

96. The refinery has failed to comply with the requirements of the Benzene Waste NESHAP that are applicable to facilities with a TAB of less than 10 megagrams per year.

97. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

98. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 167 of the CAA, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive

relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## EIGHTH CLAIM FOR RELIEF
### (CERCLA)

99. Paragraphs 1 through 98 are re-alleged and incorporated by reference as if fully set forth herein.

100.    Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires a person in charge of a facility to immediately notify the National Response Center of a release of a hazardous substance from such facility in an amount equal to or greater than the amount determined pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602 (the "reportable quantity").

101.    WRC is "in charge of" the Newcastle refinery, within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

102.    WRC has failed to immediately notify the National Response Center of releases from the refinery of hazardous substances in an amount equal to or greater than the reportable quantity for those substances.

103.    The acts or omissions referred to in the preceding paragraph constitute violations of Section 103(a) of CERCLA, 42 U.S.C. § 9603.

104.    Pursuant to Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), WRC is liable for a civil penalty of up to: (1) $25,000 per day for each day each violation of Section 103(a) of

CERCLA continues, and (2) up to $75,000 per day for each day that any second or subsequent violation continues.

## NINTH CLAIM FOR RELIEF
### (EPCRA)

105.   Paragraphs 1 through 104 are re-alleged and incorporated by reference as if fully set forth herein.

106.   Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b), requires the owner and operator of a facility at which a hazardous chemical is produced, used, or stored, to immediately notify the State Emergency Response Commission ("SERC" – State Authority) and the Local Emergency Planning Committee ("LEPC" – Local Authority) of certain specified releases of a hazardous or extremely hazardous substance.

107.   WRC is the "owner and operator" of the refinery within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b).

108.   The WRC refinery is a "facility" at which "hazardous chemicals" are produced, used, or stored, within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b).

109.   Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), requires that, as soon as practicable after a release which requires notice under Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), the owner or operator shall provide a written follow up emergency notice providing certain specified additional information.

110.   There have been "releases" of "hazardous substances" within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 1104(a), (b), at the WRC refinery. These hazardous substances included, without limitation, hydrogen sulfide, anhydrous ammonia, and

Complaint -22-

sulfur dioxide, and were released in an amount greater than the reportable quantity. On each of these occasions, WRC has failed to immediately notify the SERC (State Authority) of a release of a hazardous or extremely hazardous substance as required by Section 304(a) of EPCRA, 42 U.S.C. § 11004(a); and to immediately notify the LEPC (Local Authority) of a release of a hazardous or extremely hazardous substance as required by Section 304(a) of EPCRA, 42 U.S.C. § 11004(a).

111.    The acts or omissions referred to in the preceding paragraphs constitute violations of Section 304 of EPCRA, 42 U.S.C. § 11004(a), (b).

112.    Pursuant to Section 325(b) of EPCRA, 42 U.S.C. § 11045(b)(3), WRC is liable for civil penalties in an amount not to exceed \$25,000 per day for each day the violation continues and in an amount not to exceed \$75,000 per day for each day that any second or subsequent violation continues.

## PRAYER FOR RELIEF

1. Order WRC to immediately comply with the statutory and regulatory requirements cited in this Complaint, under the CAA, CERCLA and EPCRA;

2. Order WRC to take appropriate measures to mitigate the effects of its violations;

3. Assess civil penalties against WRC for up to the maximum amounts provided in the applicable statutes; and

4.  Grant the United States such other relief as this Court deems just and proper.

Respectfully submitted,

Date: *February 5, 2009*

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources
    Division
United States Department of Justice

Date: *February 6, 2009*

DAVID M. ROCHLIN
Special Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
United States Department of Justice
c/o U.S. EPA (Mail Code ENF-L)
Denver, Colorado 80202
Telephone: (303) 312-6892
Facsimile: (303) 312-7202

KELLY H. RANKIN
United States Attorney

Date: *February 10, 2009*

CAROL A. STATKUS
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124